UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAUL C. NORDBERG and DEBRA L. NORDBERG, individually and on behalf of Kevin P. Nordberg, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 11-40206-FDS |
| v. | ) ) ) | |
| TOWN OF CHARLTON, CHARLTON POLICE DEPARTMENT, WILLIAM J. BEDARD, LINDA WATSON, and JAMES A. PERVIER, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER
## ON MOTION TO DISMISS

**SAYLOR, J.**

This action arises from alleged police misconduct during the investigation of a domestic marital dispute. In 2008, Kevin Nordberg, the son of plaintiffs Paul and Debra Nordberg, committed suicide. He did so after he was charged with assault and battery and the attempted murder of his wife, whom he suspected of infidelity. His parents allege that the police conspired with Kevin's wife to fabricate the charges against him and thereby to gain her an advantage in divorce proceedings. Proceeding *pro se*, they seek damages under 42 U.S.C. § 1983 and the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258.

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, on the grounds that plaintiffs lack standing. For the reasons set forth below, the motion will be granted.

I.      **Background**

The facts are stated as alleged in the complaint.

Plaintiffs Paul and Debra Nordberg are the parents of Kevin Nordberg, who is deceased. (Compl. "Parties" ¶¶ 1-2 ). The Charlton Police Department is a division of the Town of Charlton, a municipality. (*Id.* ¶¶ 3-4). Defendants William Bedard and Linda Watson are police officers in the department, and James Pervier is the department chief. (*Id.* ¶¶ 5-7).

In the summer of 2006, Kevin married Jennifer Z. Nordberg. (Compl. "Facts" ¶ 1). After a period during which they lived in an apartment in Worcester, Massachusetts, Kevin and Jennifer purchased a condominium in Charlton. (*Id.* ¶ 2). For much of their marriage, Jennifer was unemployed, while Kevin, who worked for DHL, traveled regularly for his job. (*Id.* ¶¶ 4-3).

Sometime before September, 2008, Jennifer began an affair with another man, who lived in Worcester. (*Id.* ¶¶ 5-6). On at least one occasion, Jennifer's car was seen by some of Kevin's friends parked overnight outside that man's house while Kevin was traveling for work. (*Id.* ¶ 6).

According to Jennifer, Kevin was not aware of the affair until October 25, 2008. (*Id.* ¶ 8). At approximately 9:30 p.m. on that night, Kevin dialed the emergency 9-1-1 telephone line and reported that Jennifer was asleep and that he was unable to wake her. (*Id.* ¶ 7). Officer Watson responded to the call. (*Id.* ¶ 9). Jennifer, who was awake by the time of the officer's arrival, stated that she believed that Kevin had put a substance in her drink that had caused her to fall asleep. (*Id.* ¶ 10). Jennifer was transported by ambulance to the Harrington Memorial Hospital. (*Id.*).

On November 7, 2008, Jennifer called the town's 9-1-1 line. (*Id.* ¶ 13). She told the dispatcher that her husband Keven had tried to kill her. (*Id.* ¶ 14). Officers Bedard and Watson

2

and Detective William Beaudry responded to the call. (*Id.* ¶¶ 14-15). When they arrived, they placed Kevin under arrest for domestic assault and battery. (*Id.* ¶ 17). Later, at the station, the officers decided to add attempted murder to the charges against Kevin. (*Id.* ¶ 18).

During the course of the investigation on November 7, Jennifer issued a witness statement and affidavit in which she described the events of that night. (*Id.* ¶ 27, Ex. C, D). She asserted that Kevin had grabbed her from behind, with his arm around her neck, and tried to "get on top of" her. (*Id.* ¶¶ 28-29, Ex. D). In his report of the incident, Officer Bedard noted that he observed red marks on Jennifer's neck and face. (*Id.* ¶ 30, Ex. A). In her supplemental report on the incident, Officer Watson noted that Jennifer had "bright red and swollen ears and scratches on the front of her neck near her adams apple and at the base of her neck." (*Id.* ¶ 31, Ex. B). Jennifer's statements and the officers' reports all indicated that Kevin was drunk at the time of the alleged attacks. (*Id.* ¶ 34, Ex. A, B, C, D).

On November 10, Officer Bedard filed an application for a criminal complaint in the Dudley District Court based on the events of November 7. (*Id.* ¶ 21). The clerk magistrate of that court found probable cause as to the charges of assault and battery and attempted murder. (*Id.* ¶ 22, Ex. B). Kevin was arraigned the same day. (*Id.* ¶ 25).[1] The events of November 7 and the resulting criminal charges were reported in the Worcester Telegram and the Southbridge Evening News. (*Id.* ¶ 32).

On December 9, 2008, Jennifer again called 9-1-1. (*Id.* ¶ 42). She reported that Kevin was indicating that he was about to commit suicide. (*Id.* ¶ 43). According to Officer Watson's narrative of the subsequent events, the police located Kevin later that evening and transported

---

[1] It appears, from the subsequent events alleged in the complaint, that Kevin was released on bail following his arraignment.

him to the UMass Memorial Medical Center. (*Id.* ¶¶ 44-46, Ex. E). The officers' narrative describing that night referred to Kevin's actions as a "game," adopting a characterization of his behavior that was first expressed to them by Jennifer. (*Id.* ¶¶ 47-49).

Kevin committed suicide by means of carbon-monoxide poisoning on December 18, 2008. (Compl. "Parties" ¶¶ 1-2).

On January 31, 2009, a long-time friend of Kevin and Jennifer, Patrick Patton, visited the Charlton Police Department to provide information about the events of November 7, 2008. (Compl. "Facts" ¶ 50). Patton offered a verbal and written statement in which he averred that he had spoken with Jennifer about that night and that Kevin's actions had been exaggerated in the reports in the newspapers. (*Id.* ¶¶ 51-53).

At some point, plaintiff Paul Nordberg asked the Charlton Police Department for copies of photographs taken of Kevin and Jennifer during the investigation of Jennifer's 9-1-1 call on November 7. (*Id.* ¶ 36). The police provided the photographs. (*Id.* ¶ 37). Plaintiffs allege that those photographs demonstrate that Jennifer had received none of the injuries listed in the officers' reports. (*Id.* ¶ 38).

Plaintiffs commenced this action on October 28, 2011. The complaint asserts claims under 42 U.S.C. § 1983 for alleged violations of the Fourth, Fifth, and Fourteenth Amendments of the Constitution and under the Massachusetts Tort Claims Act for alleged negligence and malicious prosecution by the officers. Those claims are asserted on behalf of Kevin Nordberg (count I and IV) and by each parent separately (counts II, III, V, VI).

II.     **Standard of Review**

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### III.   Analysis

Plaintiffs assert claims under 42 U.S.C. § 1983 and the MTCA. Section 1983 is a vehicle for vindicating substantive rights conferred by the Constitution or laws of the United States that have been violated by persons acting under color of state law. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Albright v. Oliver*, 510 U.S. 266, 315 (1994). The MTCA provides that the Commonwealth and its entities may be sued for the negligence of public employees with respect to conduct that is within the scope of their employment. Mass. Gen. Laws ch. 258, § 2; *Lewis v. Kendrick*, 944 F.2d 949, 953 (1st Cir. 1991).

As to the § 1983 claim, federal law does not address whether an action under that section survives the death of the party whose rights have allegedly been violated. Rather, a plaintiff's

capacity to bring suit for violations that allegedly caused a person's death is generally controlled by state law governing survivorship and wrongful death actions.  42 U.S.C. § 1988(a); *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978); *Bell v. Milwaukee*, 746 F.2d 1205, 1236 (7th Cir. 1984).[2]  Defendants contend that Massachusetts law bars plaintiffs' claims under both § 1983 and the MTCA.[3]

Under Massachusetts law, an action that survives the death of the claimant generally may be commenced only by the executor or the administrator of the decedent's estate.  Mass. Gen. Laws ch. 230, § 1; *see Levin v. Berley*, 728 F.2d 551, 556 (1st Cir. 1984).[4]  An heir, legatee, or creditor who has an interest in the enforcement of a survival claim may pursue that claim on behalf of the estate, but only if he first requests that the estate bring the suit and that request is denied.  Mass. Gen. Laws ch. 230, § 5; *see Umsted v. Umsted*, 446 F.3d 17, 22 (1st Cir. 2006).  Here, there is no allegation that plaintiffs have met these prerequisites to assert a survival claim.

Capacity to bring an action for wrongful death is similarly limited by a requirement that "the 'executor or administrator of the deceased,' rather than any beneficiary of the estate as such, act as the plaintiff in a wrongful death action brought on behalf of the designated categories of beneficiaries."  *Marco v. Green*, 415 Mass. 732, 735-36 (1993).  *See* Mass. Gen. Laws ch. 229, §

---

[2] An exception to that general rule provides that state law will not apply if its application will be inconsistent with the purposes of § 1983.  42 U.S.C. § 1988(a); *Robertson*, 436 US at 590.

[3] The capacity of a plaintiff to bring a lawsuit is properly viewed as a matter of standing that ordinarily should be raised in a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *See, e.g.*, *United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007).  However, the distinction between a motion to dismiss under Rule 12(b)(6) and one brought under Rule 12(b)(1) is not material in this context.

[4] At common law, the claim of an injured party did not survive the death of either the injured party himself or the alleged wrongdoer.  *Robertson*, 436 U.S. at 589 (quoting *Moor*, 411 U.S. at 702 n.14); *Pine v. Rust*, 404 Mass. 411, 417 (1989). That rule has been modified by statute in Massachusetts.  *See* Mass. Gen. Laws ch. 228, § 1.  The Court will assume for purposes of this analysis that the claims at issue here may survive.  *See Pomeroy v. Ashburnham Westminster Reg'l Sch. Dist.*, 410 F. Supp. 2d 7, 13 (D. Mass. 2006) (discussing the application of Mass. Gen. Laws ch. 228, § 1(2) to a § 1983 claim).

2. Thus, even the legal beneficiary of a wrongful death action may not assert that claim in his or her individual capacity. *See Bennett v. United States,* 389 F. Supp. 2d 121, 124 (D. Mass. 2005). Furthermore, where, as here, the decedent dies with a surviving spouse and no children, the sole beneficiary of any wrongful death action under Massachusetts law is the surviving spouse. Mass. Gen. Laws ch. 229, §§ 1, 2; *Bratcher v. Galusha*, 417 Mass. 28, 30 (1994) (affirming dismissal of a wrongful death action brought by the decedent's parents for loss of consortium and holding that where a decedent is survived by his spouse and no issue, "the class of persons entitled to recover damages under § 2 consist[s] of only the surviving spouse").

Survival and wrongful death actions are especially problematic when they are pursued *pro se*. By law, there are only two ways which an individual may appear in federal court: either personally, or by counsel. 28 U.S.C. § 1654. Accordingly, "an individual who is not an attorney admitted to practice before this court is not authorized to submit pleadings (including a complaint) or in any other manner appear on behalf of another person or entity." *Matthews v. Cordeiro*, 144 F. Supp. 2d 37, 38 (D. Mass. 2001); *see also Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41 (1st Cir. 1982). Under Local Rule 83.5.3(c), "a person who is not a member of the bar of this court . . . will be allowed to appear and practice before the court *only* in *his own* behalf." (emphasis added). The estate of a decedent is a separate legal entity from an individual plaintiff. Thus, even if a plaintiff is the executor of an estate or is otherwise authorized to pursue a decedent's legal claim, he may not do so *pro se*.

Finally, plaintiffs' personal claims must be dismissed because they have not suffered the deprivation of a personal right that is actionable under § 1983. Although the Constitution protects certain interests in familial association, cases recognizing such a violation generally fall

7

into two categories: (1) where state action interferes with private family decisions, and (2) where the state seeks to affect a parental relationship—for example, by terminating parental rights. *Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986). Here, plaintiffs assert only an interest in the continued life of their adult son; this case accordingly involves neither form of violation. *See Manarite v. City of Springfield*, 957 F.2d 953, 960 (1st Cir. 1992) (holding, in a case where the plaintiff alleged that the defendants had failed to prevent her father's suicide, that a daughter has no protected liberty interest in her familial relationship with her father); *Ortiz*, 807 F.2d at 9 (declining to recognize a right to familial association between a stepparent and an adult child); *Figueroa-Lopez v. Hilerio-Padilla*, 199 F. Supp. 2d 1, 4-5 (D.P.R. 2002) ("The First Circuit has refused to find a constitutionally protected interest for family members in the companionship of a victim who suffers a § 1983 violation.") (collecting cases); *Ealey v. Detroit*, 144 Mich. App. 324, 339 (1985) (rejecting § 1983 claim by parents for the death of an adult child who was not living with or supporting them); *Jackson v. Marsh*, 551 F. Supp. 1091, 1094 (D. Colo. 1982).[5]

Because plaintiffs lack standing to pursue claims on the decedent's behalf, and because they do not state actionable claims of their own, they lack standing to pursue damages under § 1983 and the MTCA.

**IV.   Conclusion**

For the foregoing reasons, the motion to dismiss is GRANTED.

---

[5] It is true that some courts have held that parents do themselves suffer the deprivation of a constitutional right when a governmental action causes the death of their adult child. *See, e.g.*, *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1188-89 (10th Cir. 1985). Other courts have determined that wrongful death statutes that bar § 1983 claims by parents for actions that cause the death of their child are inconsistent with the purposes of the federal law and therefore preempted by the terms of 42 U.S.C. § 1998(a). *Bell v. Milwaukee*, 746 F.2d 1205, 1236 (7th Cir. 1984); *Doty v. Carey*, 626 F. Supp. 359, 364 (N.D. Ill. 1986). Those decisions, however, appear not to reflect the law in this circuit.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: July 19, 2012